**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| THE PROTECT DEMOCRACY PROJECT, INC., |
| Plaintiff, |
| v. |
| UNITED STATES DEPARTMENT OF JUSTICE, |
| Defendant. |

Civ. Action No. 20-2810 (EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiff The Protect Democracy Project ("Protect Democracy")—a nonpartisan non-profit organization that "seeks to inform the public's understanding of government operations and activities, including the conduct of elections" by "gathering and disseminating information that is likely to contribute significantly to the public's understanding of executive branch operations and activities"—brings this lawsuit against Defendant United States Department of Justice ("DOJ"). *See* Compl., ECF No. 1 ¶ 10.[1] Protect Democracy alleges that DOJ has failed to comply with its duties under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See id*. ¶¶ 45-47. Protect Democracy seeks a

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

preliminary injunction ordering DOJ to "process Plaintiff's FOIA request on an expedited basis" and to "produce, by a date certain set by this Court, all non-exempt records responsive to Protect Democracy's FOIA request for '[a]ny and all communications with individuals in the United States Postal Inspection Service regarding participation in any DOJ voting or voting fraud task force,' or, if no such records exist, an acknowledgment to that effect." *See* Pl.'s Mot. Prelim. Inj., ECF No. 16 at 1.[2]

Upon consideration of the Plaintiff's motion, the response, the reply thereto, the applicable law, and the entire record, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

# I. Background

## A. Statutory and Regulatory Framework

FOIA provides a "statutory right of public access to documents and records" held by federal government agencies. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). Pursuant to FOIA, agencies are directed to determine within 20 business

---

[2] Protect Democracy also requests oral argument on its motion for preliminary injunction. *See* Pl.'s Mot. Prelim. Inj., ECF No. 16 at 2. Because the Court is ruling on the motion within 21 days of its filing, the Court deems oral argument unnecessary. *See* L. Civ. R. 65.1(d) ("On request of the moving party together with a statement of the facts which make expedition essential, a hearing on an application for preliminary injunction shall be set by the Court no later than 21 days after its filing, unless the Court earlier decides the motion on the papers . . . .").

days whether to comply with requests it receives and to notify immediately the person making the request of such determination and of the reasons for the determination. 5 U.S.C. § 552(a)(6)(A)(i); *see also Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*") (noting that a government agency must respond to a FOIA request within twenty business days and "at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse"). If "unusual circumstances" exist, as defined by the statute, this deadline may be extended for an additional ten days by providing written notice to the person or entity placing a request. 5 U.S.C. § 552(a)(6)(B)(i). If the agency fails to comply with the statutory time requirements, the person or entity making the request may file suit in federal court before exhausting administrative remedies. *Id.* § 552(a)(6)(C)(i). The court then may either order the production of any agency records improperly withheld or, upon a finding of "exceptional circumstances" and "due diligence" by the agency, retain jurisdiction and allow the agency additional time to complete its review of the requested records. *Id.*

3

Agencies typically process FOIA requests for records in the order in which the agency receives them. *See, e.g.*, 28 C.F.R. § 16.5(a) (DOJ "[c]omponents ordinarily shall respond to requests according to their order of receipt"); *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 614-16 (D.C. Cir. 1976). But FOIA also provides for expedited processing of requests for agency records, directing agencies to "process as soon as practicable any request for records to which [they have] granted expedited processing." 5 U.S.C. § 552(a)(6)(E)(iii). Expedition is available for requests: "(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i). The FOIA expedited processing provision was added in 1996 by the Electronic Freedom of Information Act Amendments, Pub. L. 104-231, § 8, 110 Stat. 3048, 3051-52. The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), in examining the legislative history of these amendments, has noted that "the specified categories for compelling need are intended to be narrowly applied." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26 (1996), 1996 U.S.C.C.A.N. 3448, 3469). When a request for expedited processing is filed, the agency has 10 days from receipt of the request to determine whether to grant the request for expedition. *See* 5 U.S.C. § 552(a)(6)(E)

4

(ii)(I).

**B. Factual Background**

On July 17, 2020, Protect Democracy sent DOJ's Office of Information Policy ("OIP"), Civil Rights Division, and Criminal Division a FOIA request seeking "[a]ny and all communications with individuals in the United States Postal Inspection Service [("USPIS")] regarding participation in any DOJ voting or voting fraud task force." *See* Ex. A to Pl.'s Mot., ECF No. 16-4 at 2. Protect Democracy stated that its request "relates to potential political interference by the Department of Justice with the U.S. Postal Service's preparations for processing the anticipated surge in voting by mail in light of the COVID-19 pandemic—an issue of utmost importance to the public." *Id.* at 3. The organization noted its concern regarding recent remarks made by President Donald J. Trump and Attorney General William Barr, which Protect Democracy interpreted as "undermining public confidence" in voting by mail, among other things. *Id.* at 3-4. Protect Democracy also asserted that the situation was made more urgent because, "[e]ven without DOJ interference, the USPS is at risk of falling fall short of carrying out its crucial responsibility in the upcoming election." *Id.* at 4. Protect Democracy requested the records within the time period of "March 1, 2020 through the date that the searches are conducted for records responsive to this FOIA request." *Id.* at 3. It also

requested that the relevant DOJ divisions search for records from "all components of the Department of Justice that may be reasonably likely to produce responsive results, including but not limited to the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Civil Rights Division, and the Criminal Division." *Id.*

Protect Democracy requested expedited processing of its FOIA request under 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e) because, according to Protect Democracy, the subject matter "concerns '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence,' 28 C.F.R. § 16.5(e)(1)(iv), and because there is an urgent need 'to inform the public about an actual or alleged Federal Government activity' and the request is 'made by a person who is primarily engaged in disseminating information,' 28 C.F.R. § 16.5(e)(1)(ii)." *Id.*

DOJ's Civil Rights Division responded to Protect Democracy's FOIA request on July 22, 2020. Ex. B to Pl.'s Mot., ECF No. 16-5 at 2. The Civil Rights Division wrote that it "was extending the time limit to respond to [Protect Democracy's] request beyond the ten additional days provided by the statute" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii). *Id.* at 3. The

Civil Rights Division did not inform Protect Democracy whether
it would grant expedited consideration of the FOIA request. On
October 23, 2020, the Civil Rights Division sent Protect
Democracy a letter stating that the searches had been conducted
and no responsive records were found. Ex. A to Sur Suppl. Decl.,
ECF No. 23-1.

DOJ's OIP also responded to Protect Democracy on July 22,
2020. Ex. C to Pl.'s Mot., ECF No. 16-6 at 2. OIP handles FOIA
requests for three of the entities from which Plaintiffs seek
records: the Office of the Attorney General, Office of the
Associate Attorney General, and Office of the Deputy Attorney
General. Def.'s Opp'n, ECF No. 21 at 10. OIP denied Protect
Democracy's request for expedited processing. Ex. C to Pl.'s
Mot., ECF No. 16-6 at 2-3. Similar to the Civil Rights Division,
OIP also cited to 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) and informed
Protect Democracy that due to "unusual circumstances," OIP
"w[ould] need to extend the time limit to respond to [Protect
Democracy's] request beyond the ten additional days provided by
the statute." *Id.* On October 20, 2020, OIP sent Protect
Democracy a letter stating that the searches had been conducted
and "no records responsive to your request were located." Ex. A
to Sur Decl., ECF No. 21-1 at 3.

On July 27, 2020, DOJ's Criminal Division responded to
Plaintiff's FOIA request and denied expedited processing. Ex. B

to Butler Decl., ECF No. 21-2 at 24-25. The Criminal Division is conducting an "initial search" of email communications, and the search is still in progress. Butler Decl., ECF No. 21-2 ¶ 9. The Criminal Division remains the only DOJ entity to have not completed the processing of Protect Democracy's FOIA request.

On October 2, 2020, Protect Democracy filed its lawsuit against DOJ, Compl., ECF No. 1, and subsequently moved for a preliminary injunction on October 9, 2020, Pl.'s Mot., ECF No. 16. DOJ filed its opposition on October 20, 2020, Def.'s Opp'n, ECF No. 21, and Protect Democracy filed its reply on October 23, 2020, Pl.'s Reply, ECF No. 24. The motion is ripe for the Court's adjudication.

## II. Legal Standard

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration in original) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction is an "extraordinary remedy that may only

be awarded upon a clear showing that the plaintiff is entitled
to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555
U.S. 7, 22 (2008) (citation omitted). "The purpose of a
preliminary injunction is merely to preserve the relative
positions of the parties until a trial on the merits can be
held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981). In
this Circuit, the four factors have typically been evaluated on
a "sliding scale," such that if "the movant makes an unusually
strong showing on one of the factors, then it does not
necessarily have to make as strong a showing on another factor."
*Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1291-92
(D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v.
Natural Resources Defense Council,* 555 U.S. 7 (2008), "the D.C.
Circuit has suggested that a positive showing on all four
preliminary injunction factors may be required." *Holmes v. FEC,*
71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley,* 644
F.3d at 393 ("[W]e read *Winter* at least to suggest if not to
hold that a likelihood of success is an independent, free-
standing requirement for a preliminary injunction." (citation
and quotation marks omitted)). Nonetheless, "the Circuit has had
no occasion to decide this question because it has not yet
encountered a post-*Winter* case where a preliminary injunction

motion survived the less rigorous sliding-scale analysis."
*ConverDyn v. Moniz,* 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

## III. Analysis

### A.  Plaintiff Is Likely To Succeed On The Merits Of Its Claim

Plaintiff argues that it is likely to succeed on the merits
of its claim because (1) DOJ "failed to meet FOIA's unambiguous
deadlines," and (2) DOJ "improperly denied Plaintiff's request
for expedited treatment." Pl.'s Mot., ECF No. 16-1 at 28.

Regarding Protect Democracy's first argument, Plaintiff
asserts that, as of the date of its filing the pending motion,
DOJ "had let nearly 60 business days pass without issuing the
required determination."[3] Pl.'s Reply, ECF No. 24 at 10. Protect
Democracy contends that DOJ has "failed to gather and review
responsive documents" within the statutorily prescribed time
period, and because of that violation, it "is certain to succeed
on the merits of its claim that [DOJ] owes it a determination on
its requests." Pl.'s Mot., ECF No. 16-1 at 28-29. While Protect
Democracy acknowledges that "FOIA itself does not require
production by a date certain," it asserts that "courts have

---

[3] The D.C. Circuit has defined "determination" as requiring that
"within the relevant time period, the agency must at least
inform the requester of the scope of the documents that the
agency will produce, as well as the scope of the documents that
the agency plans to withhold under any FOIA exemptions." *CREW*,
711 F.3d at 186.

equitable power to order accelerated production schedules as well as production by dates certain" in order to ensure that agencies are meeting their production responsibilities. Pl.'s Reply, ECF No. 24 at 11. In response, the DOJ argues that "[a]gencies are not required to make all records available within the 20 days, but rather to make them 'promptly available.'" Def.'s Opp'n, ECF No. 21 at 21 (quoting 5 U.S.C. § 552(a)(3)(A)). Therefore, "even when an agency fails to respond to the request within 20 days, the requester is simply deemed to have exhausted administrative remedies for purposes of seeking immediate judicial review of the agency's processing of the FOIA request." *Id.*

The Court finds that Protect Democracy has "misconstrue[d] the consequences of an agency's failure to meet" its FOIA deadlines. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) (BAH). While FOIA generally requires government agencies to communicate its determination within twenty business days, this deadline "serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request." *Id.* According to the D.C. Circuit, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Crew*, 711 F.3d at 189. This "penalty" is

11

underscored by the fact that FOIA provides, where a requester seeks judicial redress, that "the agency may continue to process the request, and the court . . . will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Id.* (citing 5 U.S.C. § 552(a)(6)(C)). "Once in court, . . . the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court." *Id.* at 185 (citing 5 U.S.C. § 552(a)(6)(C)(i)). And "[i]f exceptional circumstances exist, then so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" *Id.* (quoting 5 U.S.C. § 552(a)(6)(C)(i)). Accordingly, because the Criminal Division has not yet communicated its determination on the FOIA request, Protect Democracy is deemed to have exhausted its administrative remedies and may proceed with its suit. *See CREW*, 711 F.3d at 184. "Standing alone, however, this fact does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records." *Daily Caller*, 152 F. Supp. 3d at 10-11 (quoting *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014)).

The Court next addresses Protect Democracy's argument that it is likely to succeed on the merits of its claim that DOJ improperly denied its request for expedited treatment. A decision denying expedited processing is reviewed by the courts de novo, *Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001); "based on the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii). Pursuant to FOIA, agencies are to provide expedited processing where the requester shows a "compelling need" for the relevant information, 5 U.S.C. § 552(a)(6)(E)(i)(I); meaning that (1) the requester is "primarily engaged in disseminating information" and (2) there is an "urgency to inform the public concerning actual or alleged Federal Government activity," *id.* § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(e)(1)(ii) (same).

The Court first turns to whether Protect Democracy is "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v). This standard "requires that information dissemination be the main [and not merely an incidental] activity of the requestor." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (CRC) (alteration in original) (quoting *Progress v. Consumer Fin. Prot. Bureau*, No. 17-686, 2017 WL 1750263, at *3 (D.D.C. May 4, 2017)). However, "publishing information 'need not be [the organization's] sole occupation.'" *Id.*

13

In Protect Democracy's FOIA request, it stated that it
intended to "disseminate information and analysis about this
request—and any information obtained in response—through its
website . . . ; its Twitter feed . . . , which has more than
36,000 followers; its email list of approximately 30,000 people;
and sharing information with other members of the press." Ex. A
to Pl.'s Mot., ECF No. 16-4 at 5. It noted that its "purpose"
was to "gather information of potential interest to a segment of
the public, use its editorial skills to turn the raw materials
into distinct work, and distribute that work to an audience."
*Id.* (citation omitted). It also listed examples of previous
instances when it "disseminate[d] information about its FOIA
requests to a wide audience." *Id.*  In addition, at least one
other court in this District has recently found that Protect
Democracy "easily" satisfies the requirement that the
organization is "primarily engaged in disseminating information"
based on similar statements made in a prior FOIA request. *See
Protect Democracy Project*, 263 F. Supp. 3d at 298 (finding
Protect Democracy met the requirement where it noted that it
"intend[ed] to disseminate the information obtained" and that
its "core mission . . . is to inform public understanding on
operations and activities of government"). Accordingly, the
Court finds that Protect Democracy has established that its
representations within its FOIA request likely satisfy this

requirement.

The Court next considers whether Protect Democracy's FOIA request likely demonstrated an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). Such urgency must "extend[] beyond the public's right to know about government activity generally." 28 C.F.R. § 16.5(e)(3). In addition, and as the D.C. Circuit has explained, courts should consider the following factors in evaluating whether this criterion has been satisfied: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310.

Because Plaintiff's request concerns a serious and time-sensitive matter, the Court finds that Protect Democracy also has likely satisfied this requirement. First, regarding whether the FOIA request pertains to a "matter of current exigency," Protect Democracy explained that its request "relates to potential political interference by the Department of Justice with the U.S. Postal Service's preparations for processing the anticipated surge in voting by mail in light of the COVID-19 pandemic—an issue of utmost importance to the public." Ex. A to Pl.'s Mot., ECF No. 16-4 at 3. Protect Democracy noted that it

15

had concerns regarding some of President Trump and Attorney
General Barr's recent remarks about alleged voter fraud in the
upcoming election, and that, "[e]ven without DOJ interference,
the USPS is at risk of falling short of carrying out its crucial
responsibility in the upcoming election." *Id.* at 3-4. Protect
Democracy further asserted that, in view of the impending
election and with mail-in voting underway, "[t]he public
urgently needs to know whether the USPS is on track to carry out
its role in enabling a free and fair election to proceed in
November, and whether DOJ is in any way obstructing the Postal
Service's efforts." *Id.* at 5. Accordingly, the Court finds that
Protect Democracy's statements in its FOIA letter likely
establish that the subject matter of its requested information—
DOJ's potential interference with postal services—was a matter
of "current exigency," particularly given the imminence of
Election Day and the widespread media attention to the issue of
voter fraud and slowed postal service deliveries.[4] *See* 28 C.F.R.

---

[4] *See* Ex. A to Pl.'s Mot., ECF No. 16-4 (citing, e.g., Paul
Rosenzweig & Bryson Bort, *Trump and Barr Are Making False Claims
About Mail-in Ballots to Scare Us Out of Voting*, USA Today (July
4, 2020),
https://www.usatoday.com/story/opinion/2020/07/04/attorney-
general-bill-barrwrong- mail-voting-open-floodgates-fraud-
column/3258807001/; Joshua A. Geltzer, *Four Ways William Barr Is
Already Subverting the 2020 Elections*, Wash. Post (June 26,
2020), https://www.washingtonpost.com/outlook/barr-attorney-
general-election/2020/06/26/7ad4fc7e-b6fb-11ea-a510-
55bf26485c93_story.html; Amy Gardner & Elise Viebeck, *GOP Pushes
Voting by Mail—With Restrictions—While Trump Attacks It as*

§ 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic."). Second, further delay in processing Protect Democracy's request would likely "compromise a significant recognized interest," as well. *Al-Fayed*, 254 F.3d at 310. As the D.C. Circuit has recognized, "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). With less than a week before Election Day, Protect Democracy is at risk of losing its ability to timely facilitate public awareness regarding the subject matter of its request. *See Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (RCL) (recognizing the urgency of the plaintiff's request given "the upcoming expiration of the special provisions of the Voting Rights Act of 2007"); *ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (ESH) (finding exigency because of the "ongoing debate regarding the renewal and/or amendment of the Patriot Act"). Third, Protect Democracy's FOIA request undoubtedly concerns "federal government activity." *Al-Fayed*, 254 F.3d at 310.

---

'*Corrupt*,' Wash. Post (Apr. 13, 2020), https://www.washingtonpost.com/politics/gop-pushes-voting-by-mail--withrestrictions-- as-trump-attacks-it-as-corrupt/2020/04/12/526057a4-7bf8-11ea-a130-df573469f094_story.html).

Accordingly, the Court concludes that Protect Democracy has shown a likelihood of success on the merits of its request for expedited processing.[5] *See, e.g.*, *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 11 (D.D.C. 2019) (CKK) (finding plaintiff had established a likelihood of success on the merits where plaintiff explained it was "primarily engaged in disseminating information," it intended to produce original reports based on the analysis of the requested information, and the information was "a matter of immediate concern to the American public" because it was "the subject of imminent congressional hearings and action").

### B. Plaintiffs Face Irreparable Harm

"In this Circuit, a litigant seeking a preliminary injunction must satisfy 'a high standard' for irreparable injury." *ConverDyn*, 68 F. Supp. 3d at 46 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The movant must demonstrate that it faces an injury that is "both certain and great; it must be actual and not theoretical," and of a nature

---

[5] Protect Democracy also argues that it is entitled to expedited processing because it has shown that its request concerns a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" under 28 C.F.R. § 16.5(e)(1)(iv). Pl.'s Mot., ECF No. 16-1 at 29. Because the Court has found that Protect Democracy is entitled to expedition because it has likely demonstrated an "urgency to inform the public concerning actual or alleged Federal Government activity," the Court need not evaluate this argument at this time.

"of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and emphasis omitted). "District courts in this circuit have recognized that, where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, No. 20-1196 (TFH), 2020 WL 3639733, at *4 (D.D.C. July 6, 2020); *see also Elec. Privacy Information Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (finding irreparable harm where plaintiff would be "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program").

Protect Democracy contends that its request for "materials related to Defendant's plans for investigating mail-in voter fraud in the November 2020 election," with Election Day now only a few days away and early voting ongoing, is the "quintessential example" of the type of request that should be processed expeditiously. Pl.'s Mot., ECF No. 16-1 at 33. Protect Democracy argues that the "need for prompt compliance" is further heightened here because the subject matter of the FOIA request concerns a "critical question that has yet to be answered

publicly," as well as citizens' fundamental right to vote. *Id.*
According to Protect Democracy, "[w]hether USPIS is working with
DOJ to conduct these investigations is critical given USPIS's
role as the law enforcement arm of the federal agency charged
with overseeing voting by mail," noting that "[t]his role gives
USPIS a unique opportunity to disrupt and delay the flow of mail
ballots across the country, potentially risking the
disenfranchisement of American voters." Pl.'s Reply, ECF No. 24
at 17.

   In opposition, DOJ argues that Protect Democracy has not
shown that harm will result without a preliminary injunction
because, while the events described in the FOIA request occurred
"as early as April 14, 2020," Protect Democracy did not submit
its request until July 17, 2020 and did not file its motion for
a preliminary injunction until October 9, 2020. Def.'s Opp'n,
ECF No. 21 at 16. DOJ also contends that Protect Democracy's
assertion that its FOIA request addresses a "critical question
that has yet to be answered" merely amounts to a "policy
disagreement about the scope of the disclosure the Department
has already made about its inquiries into potential violations
of federal law arising from mail-in voting." *Id.* at 17. Because
Protect Democracy has already asserted that DOJ's "activities
regarding potential voter fraud are misaligned with that
'incidence of . . . fraud,'" DOJ contends that "awaiting

ordinary processing of its FOIA request will not deprive it of the ability to advance those views in public, before or after the election." *Id.* (alteration in original). DOJ further argues that Protect Democracy puts forth no evidence showing why the processing of its request must be completed prior to the election, and that it has not shown that "it cannot use existing public information about the Department's efforts to prevent voter fraud, including news releases and news media interviews granted by the Department itself, to foster public dialogue." *Id.* at 7, 17-18.

The Court finds that Protect Democracy has established a likelihood of irreparable harm absent a preliminary injunction. As stated above, the Court has concluded that the subject matter of Protect Democracy's FOIA request is time sensitive due to the impending election, in which voting is already underway. While the Court does not conclude at this time that any responsive communications must be processed prior to Election Day—after all, new voter fraud investigations may commence subsequent to that day, particularly in view of the state laws providing that certain mail-in ballots may be received and counted up to several days after Election Day, *e.g.*, *Absentee Voting*, N.Y. State Bd. of Elections (last visited Oct. 30, 2020) (noting that ballots submitted by mail must be postmarked by Election Day and be received within 7 days after Election Day),

21

https://www.elections.ny.gov/votingabsentee.html—Plaintiff has established that the American public has a need to know information regarding investigations into matters potentially affecting voting rights while the inquiries are still ongoing.

The Court also disagrees with DOJ's argument that the timing of Protect Democracy's FOIA request and pending motion reflects any undue delay. The Court is persuaded that Protect Democracy's FOIA request was based upon multiple sources of information regarding USPS's ability to timely deliver election mail and remarks concerning the integrity of mail-in voting procedures, some of which were reported within days of Protect Democracy filing its request. *See* Ex. A to Pl.'s Mot., ECF No. 16-4. In addition, Protect Democracy filed its preliminary injunction motion only two days after ProPublica and the New York Times reported that DOJ had revised its "longstanding 'non-interference with elections' policy to permit overt investigative steps, including questioning witnesses, in investigations of suspected election fraud involving postal workers or military employees." Pl.'s Reply, ECF No. 24 at 16.

Furthermore, though DOJ refers to publicly available information that Plaintiff can utilize regarding efforts to prevent voter fraud, DOJ does not refer to any public information specifically relating to Protect Democracy's request about USPIS involvement in such efforts. It is thus uncertain

whether there is any information currently available to the
public given Protect Democracy's assertion that, as far as it is
aware, "*no* information has yet been made public about USPIS's
role." Pl.'s Reply, ECF No. 24 at 17.

Accordingly, the Court finds that Protect Democracy has
sufficiently shown it will likely suffer irreparable harm absent
a preliminary injunction.

### C. The Balance of Equities and Public Interest Favor an Injunction

The balance-of-equities factor directs the Court to
"balance the competing claims of injury and . . . consider the
effect on each party of the granting or withholding of the
requested relief." *ConverDyn*, 68 F. Supp. 3d at 52 (quoting
*Winter*, 555 U.S. at 24). "When the issuance of a preliminary
injunction, while preventing harm to one party, causes injury to
the other, this factor does not weigh in favor of granting
preliminary injunctive relief." *Id.*; *see also Serono Labs., Inc.
v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998). By contrast,
the balance of equities may favor a preliminary injunction that
serves only "to preserve the relative positions of the parties
until a trial on the merits can be held." *Rufer v. FEC*, 64 F.
Supp. 3d 195, 206 (D.D.C. 2014) (CRC) (quoting *Camenisch*, 451
U.S. at 395). "The purpose of . . . interim relief is not to
conclusively determine the rights of the parties, *Univ. of Tex.*

23

*v. Camenisch*, 451 U.S. 390, 395 (1981), but to balance the equities as the litigation moves forward. In awarding a preliminary injunction a court must also 'conside[r] . . . the overall public interest,' *Winter*, [555 U.S.] at 26." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (second alteration in original).

Protect Democracy argues that DOJ "cannot be 'burdened' by a requirement that it merely comply with the law," and that, "[t]o the extent that there is a burden to others awaiting processing of FOIA requests, it is one imposed by Congress." Pl.'s Mot., ECF No. 16-1 at 34. Protect Democracy further argues that any burden would be minimal, as it has only requested one category of documents and, even if expedited processing slowed the processing of other FOIA requests, "[t]his is the extraordinary case where the public interest favors placing [Protect Democracy's] request[] ahead of other requests in [Defendant's] FOIA queues." *Id.* at 34-35 (alterations in original) (citations omitted). Protect Democracy further contends that the public interest favors the requested relief because the "public will benefit from a better understanding of DOJ's plans for the upcoming election, and particularly the extent to which DOJ is working with USPIS to conduct voter fraud investigations." *Id.* at 35. Protect Democracy points out that DOJ "has already proven that it can conduct a prompt search for

records responsive to this narrowly tailored request": four of
the five division within DOJ have already completed their search
for records responsive to its request and have communicated the
results of that search. Pl.'s Reply, ECF No. 24 at 20. The
Criminal Division is the only unit that has not yet conducted a
search for records. *Id.*

In opposition, DOJ argues that "entry of a preliminary
injunction expediting a FOIA request over other pending requests
'would severely jeopardize that public's interest in an orderly,
fair, and efficient administration of [] FOIA.'" Def.'s Opp'n,
ECF No. 21 at 27 (alteration in original) (citation omitted).
DOJ contends that the Criminal Division would also be "unduly
burdened" by expedited processing because it handles "about 880
open administrative requests and 50 open litigation matters as
of October 20, 2020." *Id.* at 11, 28. "Moreover, operational
adjustments because of the COVID-19 pandemic created an
unanticipated delay in certain aspects of the FOI/PA Unit's
processing workflow." *Id.* at 12. Finally, DOJ argues that
"[r]isk of inadvertent disclosure is an especially weighty
consideration here because by its terms it is evident that a
significant portion of the records potentially responsive to the
Project's request for communications between USPIS and the
Department could be exempt." *Id.* at 29.

Here, the balance of the equities and the public interest

favor an injunction. The public interest is best "served by the expedited release of the requested documents because it furthers FOIA's core purpose of 'shed[ding] light on an agency's performance of its statutory duties.'" *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 42 (alteration in original) (citation omitted); *see also Ctr. to Prevent Handgun Violence v. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) (JR) ("There is public benefit in the release of information that adds to citizens' knowledge . . . ."). Furthermore, given that Election Day is days away, that a large portion of voters have already submitted their ballots by mail, and that there is significant media attention and public debate on the topic of alleged voter fraud, the public interest is particularly well-served by the timely release of the requested documents. There is no doubt that the subject matter of the FOIA request concerns a matter of great importance. *See Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 187 (D.D.C. 2019) (CRC) (noting that where records "could directly inform the [impeachment] investigation and the surrounding public debate," the public's interest in the information "outweigh[ed] any harm to other FOIA requesters"); *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006) (RMU) ("[P]ursuant to the statutory provision mandating expedited treatment, the public's interest in expedited processing of the plaintiff's request outweighs any

general interest that it has in first-in-first-out processing of
FOIA requests.").

The Court is also unpersuaded by DOJ's assertions regarding
the risks of disclosing exempted documents, particularly where
it is unknown whether there are any documents responsive to
Protect Democracy's request in the first place. "Vague
suggestions that inadvertent release of exempted documents *might*
occur are insufficient to outweigh the very tangible benefits
that FOIA seeks to further—government openness and
accountability." *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at
42. In addition, the Court is not persuaded that the Criminal
Division would face a particularly heavy burden in, at the
least, making a determination on Plaintiff's FOIA request.
Plaintiff's request is relatively limited in that it only seeks
"communications" regarding a narrowed subject matter and time
period. The Court acknowledges that the Criminal Division faces
a substantial FOIA backlog, including two expedited FOIA matters
relating to Ukraine. However, Protect Democracy clarified in its
reply brief that it is willing to confer with DOJ on proposing a
production schedule that is not unduly burdensome to DOJ.
Protect Democracy has stated that, "if after running that search
the Criminal Division *does* identify potentially responsive
documents, Protect Democracy is committed to working with both
Defendant and the Court on a processing schedule that serves

27

Protect Democracy's need to inform the public debate while imposing a minimal burden on both Defendant and the other requesters in line." Pl.'s Reply, ECF No. 24 at 20-21. The Court will therefore order the parties to meet and confer in an effort to devise a joint proposed schedule for the production of any non-exempt communications responsive to Protect Democracy's FOIA request.

Accordingly, the Court finds that the balance of the equities and the public interest favor an injunction.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiff's motion for a preliminary injunction. Any request to stay this decision pending appeal will be denied for substantially the same reasons as those articulated in this Opinion. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
          **United States District Judge**
          **October 30, 2020**